Case No. 05-10467

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

MD RICHARD FRANKLIN
        Plaintiff - Appellant

v.

BURLINGTON NORTHERN SANTA FE CORPORATION; ET AL
        Defendants

BURLINGTON NORTHERN & SANTA FE RAILWAY COMPANY
        Defendant – Appellee

                Consolidated w / 05-10602

MD RICHARD FRANKLIN
        Plaintiff – Appellee

v.

BURLINGTON NORTHERN SANTA FE CORPORATION; ET AL
        Defendants

BURLINGTON NORTHERN & SANTA FE RAILWAY COMPANY
        Defendant – Appellant

---

On Appeal from the United States District Court
For the Northern District of Texas
Fort Worth Division
C. A. No. 4 : 03-CV-228-BE

---

## BRIEF OF APPELLANT
## RICHARD FRANKLIN

---

Peter E. Ferraro
State Bar No. 06934600
Ferraro, P.C.
1104 San Antonio Street
Austin, Texas 78701
Tel: ( 512)- 474-7742
Fax: (512)- 474-8106
ATTORNEY FOR APPELLANT
RICHARD FRANKLIN

ORAL ARGUMENT REQUESTED

## CERTIFICATE OF INTERESTED PERSONS

RICHARD FRANKLIN
       Plaintiff – Appellee,

v.
                                       Case No. 05-10467

BURLINGTON NORTHERN & SANTA FE RAILWAY COMPANY
       Defendant – Appellant.

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Parties :

1.    Plaintiff – Appellee :          Richard Franklin

2.    Defendants – Appellant :      The Burlington Northern and
                                     Santa Fe Railway Company

Attorneys:

3.    For Plaintiff – Appellee :

    Attorneys on Appeal :          Peter E. Ferraro &
                                      Frederick J. Castro
                                      Ferraro, P. C.
                                      1104 San Antonio Street
                                      Austin, Texas 78701

i

Attorney at Trial :

Peter E. Ferraro
Ferraro, P. C.
1104 San Antonio Street
Austin, Texas 78701

4.    For Defendant – Appellant :

Attorneys on Appeal:

Bryan P. Neal
Stephen Fred Fink
Thompson & Knight
1700 Pacific Avenue, Ste 3300
Dallas, Texas 75201-4693

Attorneys at Trial :

Bryan P. Neal
Thompson & Knight
1700 Pacific Avenue, Ste 3300
Dallas, Texas 75201-4693

_____
Peter E. Ferraro

ii

# REQUEST FOR ORAL ARGUMENT

The request for an oral argument is necessary as this case presents a unique question of law when applied to the facts herein concerning :

1 )     the amount and type of evidence required to defeat a summary judgment in a discrimination case on the issue of whether or not an employer's asserted reason for failure to consider an applicant for employment is reasonable or merely a pretext when it is based on the belief of one individual which is contrary to the facts of the case; and

2 )     Oral discussion of the facts and the applicable precedent would benefit the Court.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS........................... i

REQUEST FOR ORAL ARGUMENT .................................... iii

TABLE OF CONTENTS ............................................... iv

INDEX OF AUTHORITIES ............................................. vi

STATEMENT OF JURISDICTION ...................................... 1

STATEMENT Of THE ISSUE .......................................... 1

STATEMENT OF THE CASE ........................................... 3

    A.    Proceedings Below ......................................... 3

    B.    Statement of the Facts......... ............................. 5

        1. Summary.................................................. 5

        2. Chronology of Facts............ ........................ 8

SUMMARY OF THE ARGUMENT ......................................19

ARGUMENT ...........................................................20

    ISSUE ONE AND TWO RESTATED :DOES THE SUMMARY
    JUDGMENT EVIDENCE RAISE A FACT ISSUE AS TO THE
    REASONABLENESS OF THE PROFFERED REASON AND
    WHETHER IT WAS MERELY A PRETEXT.:................. 20.

      1. BNSF's articulated reason relating to "policy"
      is both unreasonable and pretextual........................22
      2. BNSF's articulated reason relating to "policy"
      violates public policy ...................................24
      3. BNSF'S "articulated rational" that Franklin

had agreed to "never reapply" is both unreasonable
and pretextual............................................................25

ISSUE THREE RESTATED: BNSF's SOLE RELIANCE ON THE
PROFFERED "BELIEFS" OF KLUG CANNOT BE A
LEGITIMATE RATIONAL FOR BNSF'S FAILURE TO
GIVE AN EMPLOYMENT APPLICATION
TO FRANKLIN......................................................... 32.

ISSUE FOUR RESTATED: THE DISTRICT COURT
FAILED TO APPLY THE CORRECT STANDARD
FOR EVALUATING SUMMARY JUDGMENT
EVICENCE.............................................................34

ISSUE FIVE RESATED: FRANKLIN'S SUMMARY
JUDGMENT SHOULD HAVE BEEN GRANTED
AS A MATTER OF LAW............................................35

CONCLUSION ......................................................37

CERTIFICATE OF SERVICE .......................................38

CERTIFICATE OF COMPLIANCE ..................................39

vi

INDEX OF AUTHORITIES

CASES

*Faruki v. Parsons S.I.P. Inc.,*
      123 F.3d 315 (5th Cir.1997) ..............................

*Franklin v, The Burlington Northern and Santa Fe Railway Company,*
      No. 4:00-CV-1508-A, 2001 WL. 11431145, 2001 U.S. Dist
      LEXIS 15958 (N.D.) tex Sep. 25, 2001) ...........................

*Kendall v. Watson,*
      998 F.2D 848 (10TH Cir.1993). Cert denied, 510 U.S. 1120

*Lloyd v. Georgia Gulf Corp.,*
      961 F.2d 1190 (5th Cir.1992)

*McDonnell Douglas v. Green,*
      411 U.S. 792 (1973)

*Sherrod v. American Airlines, Inc.,*
      132 F.3d 1112 (5th Cir.1998)

*Vuyanich v. Republic Nat'l Bank of Dallas,*
      736 F. 2d 160 (5th Cir. 1984)

*Pratt v. City of Houston Texas*
      247 F. 3d 601 (5th Cir.) (citing *McDonnell Douglas
      Corp .v. Green,* 411 U.S. 792, 802-804 1973)

*Baldwin County Welcome  Ctr. v. Brown*
      466 U.S. 147, 148 n.1 (1984)

*Begay  v. St. Joseph's Indian Sch.*
      922 F. Supp.270, 272 (D.S.D. 1996) (citing *Mosel v.
      Hills Dep't Store,* 789 F. 2d 251, 252 (3d Cir. 1986)
      and *Norris v. Florida Dep't of Health & Rehabilitative Serv,.*
      730 F. 2d 682, 683 (11th Cir 1984)

vi

*Witt v, Roadway Exp.*
    136 F.3d 1424, 1429-30 (10th Cir)

*Espinoza V. Mo. Pac. R..R. Co.*
    754 F. 2d 1247.

*Sousa v. NLRB*
    817 F. 2d 10, 11 (2d Cir. 1987)

*Williams v. Time Warner Operations, Inc.*
    98 F.3d 179, 181 (5th Cir. 1996).


## STATE CASES

*Goswami v. Metropolitan Sav. & Loan Ass'n*
    751 S. W. 2d 487, 491 (Tex. 1988).


## STATUTES and RULES

42 U. S. C. §2000e-5 (f) (1)

vi

## STATEMENT OF JURISDICTION

Richard Franklin appeals a final judgment from the United States District Court for the Northern District of Texas, Fort Worth Division. This Court has jurisdiction pursuant to Title 28 U.S.C. § 1291, and 42 U.S.C § 2000e et. seq. and 28 U.S.C. 636 (c)3.

## STATEMENT OF THE ISSUES

ISSUE 1:    The District Court erred in finding that the Appellee advanced a legitimate, non-discriminatory reason for refusing to give an application for employment to the Appellant when the evidence presented creates a fact issue as to the reasonableness of such refusal.

ISSUE 2:    The District Court erred in granting Summary Judgment to the Appellee where the Appellant presented evidence that the reason advanced by the Appellee for refusing to give an application for employment to the appellant was a mere pretext.

ISSUE 3:    The District Court erred in granting Summary Judgment to the BNSF based upon the purported legitimate non-discriminatory

1

beliefs of one employee of BNSF when BNSF had knowledge that those beliefs were incorrect.

ISSUE : The District Court erred in failing to abide by applicable legal standards concerning the evaluation of evidence in a Summary Judgment proceeding.

ISSUE 5: The District Court erred in failing to grant partial Summary Judgment to Franklin where the evidence is undisputed that Franklin established a prima facie case of discrimination and retaliation and Defendant failed to show a legitimate reason for failing to allow him to apply for a job and the proffered reason was pretextual as a matter of law

## STATEMENT OF THE CASE

### A. Proceedings Below

On March 28, 2003, Appellant, Richard Franklin (hereinafter Franklin), filed a complaint in the United States District Court for the Northern District of Texas, Fort Worth Division, alleging causes of action for racial discrimination and retaliation against The Burlington Northern and Santa Fe Railway Company (hereinafter BNSF). (App. FRA0001,   )

After limited discovery, both parties below filed motions for Summary Judgment.

BNSF sought Summary Judgment as to Franklin's causes of action against it for discrimination and for retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII). (App FRA0007).

Both parties agreed that the elements of Franklin's claims are:

> 1) Franklin is in the protected class (he is an African American; and/or engaged in activity protected by Title VII ):
> 2) Franklin was subject to an adverse employment action:
> 3) BNSF took the adverse employment action because of his race and/or his protected activity.  42 U.S.C.§§ 2000e-2(a), 3(a), *McDonnell Douglas Corp v.* Green, 411 U.S. 792 (1973), and *Sherrod v. American Airlines, Inc.* 132 F.3d 1112, 1122 (5th Cir. 1998).

BNSF's Summary Judgment was based only on element 3 above.

(App.FRA00016)

3

Franklin's Partial Motion for Summary Judgment also sought to resolve the liability portion of the claim and provided evidence of the existence of all three of the elements of his causes of action listed above.

For purposes of the Summary Judgment BNSF conceded elements 1 and 2 above. Nevertheless Franklin's Summary Judgment evidence proved the existence of elements 1 and 2.

Element 3 was hotly contested. Both parties sought a ruling below as to whether or not the facts of this case demonstrate as a matter of law that BNSF took the adverse employment action because of Franklin's race and/or his protected activity.

The Court, United States Magistrate Judge Charles Bleil presiding, denied Franklin's Motion for Partial Summary Judgment and granted BNSF's Motion for Summary Judgment in a MEMORANDUM OPINION AND ORDER signed on March 3, 2005. (App. FRA00607 )

It is from that MEMORANDUM OPINION AND ORDER that Franklin now appeals.[1]

---

[1] For informational purposes the Court should be aware that Franklin filed a similar suit on December 23, 1999 after his first attempt to seek re-employment in June of that year was refused by BNSF. (Franklin v. Burlington Northern and Santa Fe Railway Corporation N0. A-99CA 828 SS). On September 25, 2001, the Trial Court, Judge McBryde presiding, granted a Summary Judgment on two grounds:
    a.. the suit was not timely filed;
    b. the second was based on theories similar to those presented herein.

4

## B. <u>Statement of Facts</u>

### 1. Summary

Franklin, an African-American, attempted to apply for employment with BNSF and was denied an application for employment in July 2002. (Appendix ) In response to Appellant's attempt to apply for a dispatcher position, BNSF's Director of Personnel, Steven J. Klug, wrote the following to Appellant:

> ...you agreed *to permanently resign* your employment with BNSF effective April 1999 (sic) *and not ever seek re-employment by BNSF,* and thus the Company does not have any obligation to consider you in the future." (emphasis added). (App FRA00358)

Franklin filed a complaint in 2003 asserting under Title VII that BNSF's refusal to "rehire him or provide him with a job application" was discriminatory and done in retaliation for his previous complaints to the Equal Employment Opportunity Commission (EEOC) and his earlier suits for racial discrimination. BNSF admitted in his Summary Judgment response below that, at least for the purpose of the Summary Judgment on

---

This Court upheld the trial court on the technical issue of whether of not Plaintiff had filed his lawsuit in a timely manner after receiving the right to sue notice. The Court of Appeals did not make any determination as to second issue dealing with the merits. (*Franklin v. Burlington Northern Santa Fe Corporation,* No. 01-11383, 34 Fed. Appx. 963, 2002 WL 663746, 2002 U.S. App.Lexis 7808 (5th Cir. March 29, 2002)(unpublished).

appeal, Franklin has established a "prima facie" case under Title VII of the Equal Employment Opportunity Act, namely: 42 U.S.C. Section 2000e-2(a)(1) and 42 U.S.C. Section 2000e-3. (App. FRA00024).

The April 1999 agreement that Klug was referring to in his response to Franklin quoted above was a settlement agreement (actually occurring in March 1999) resulting from a discrimination suit brought by Franklin along with other plaintiffs against BNSF in the Unites States District Court for the Northern District of Texas, Fort Worth Division. Cause No 4:97-CV-1051-A. BNSF reached a settlement with all of the other plaintiffs except Franklin, that included a provision that they each would permanently end their employment relationship with Burlington. Franklin, on the contrary, steadfastly refused to give up his job for a number of reasons including his time in service. He repeatedly refused to sign any settlement that would include a permanent termination. (App FRA00241-244 and FRA 00458).

In March of 1999, after much negotiation, the parties appeared to reach a compromise wherein Franklin agreed to accept $150,000.00 and to resign from his position with Burlington at that time. The parties, through their counsel, announced the settlement on the record in open court during a telephonic hearing and Franklin's claims were then dismissed with

6

prejudice.    Franklin, N. 4:97-CV-1051-A (N.D. Tex. March 31, 1999).

(App. FRA00519-522)

During the hearing in March of 1999, the attorney for BNSF advised

the court of the terms of the settlement

> The basic terms of the agreement with Mr. Franklin are Burlington and Santa Fe has agreed to pay him a total of $150,000. In exchange he has agreed to release all claims against the Burlington Northern. *He's agreed to resign his position with the Burlington Northern and Santa Fe Railway Company.* There are confidentiality provisions. Certain representatives of the Burlington Northern Santa Fe Railway Company have agreed to advise the president and chief executive officer of Mr. Franklin's desire to meet with him. And other than standard boiler plate provisions, *those would be material terms of the agreement with Mr. Franklin.* (emphasis added). (App FRA 00521)

Significantly absent from BNSF's announcement of the terms of the

settlement is any language that Franklin had agreed to ***"permanently resign"***

and **"not ever seek re-employment by BNSF."**

In spite of repeated attempts to do so, before and after the

announcement, no written settlement agreement was ever signed by the

parties.    Every agreement proposed by counsel for BNSF included a

provision that Franklin would either "permanently" resign and never apply

for a position with BNSF again or resign for a fixed number of years; all of

which Franklin consistently rejected. (App. FRA000458 and supporting

documents referred to therein.)

7

Nevertheless, based upon the material terms of the agreement announced in open Court, BNSF tendered a check to Mr. Franklin, he accepted it and resigned his position at the time. His intent was to reapply after some time passed when he felt the conditions would more conducive and the immediate antipathy resulting from the litigation had cooled. That was precisely why he wanted the settlement to include a meeting with the president and chief executive officer (a material part of the agreement announced in open Court cited above.)

## 2. Chronology of Facts

The following chronological outline of facts accurately summarize the evidence that was before the Court below at the time it entered the Order from which Franklin now appeals

1. Beginning in May 1995 until April 1999, Plaintiff Richard Franklin was employed by The Burlington Northern and Santa Fe Railway Company as a dispatcher. He was a "scheduled" employee under the collective bargaining agreement between the Defendant and the American Trade Dispatchers Union. (App. FRA 00524).

2. In December 1997, Plaintiff, an African-American, brought suit against The Burlington Northern and Santa Fe Railway Company, in Civil Action No. 4:97-CV-1051-A, alleging discrimination on the basis of race

under Title VII. *See Def App.* 119-44 *(Franklin v. Burlington Northern and Santa Fe Railway co.,* No.4:97-CV-1051-A, Plaintiff's Original Complaint).

3. From April 1998 through April 1999, Plaintiff and Defendant entered into mediation and settlement negotiations in an effort to resolve that case. At various times throughout the negotiations BNSF negotiated for Mr. Franklin's "departure from the company," "retirement" from BNSF," "resignation" and that Franklin agree "not to reapply for any position or otherwise seek employment with Defendant at any time in the future." *Def App.* 3-83 (Smith Declaration 1-11 and exhibits thereto) Franklin's position was the directly opposite. In his deposition, Franklin stated "more vehemently than anything else that we discussed was the fact that I refused to sign or go away without the opportunity to reapply ...and become re-employed." (App. FRA00543)

4. Negotiations seeking any permanent departure failed because Mr. Franklin refused to give up his job without the opportunity to reapply after a cooling off period unless he was compensated for that loss in an amount, which BNSF was unwilling to offer. *Def App.* 3-83 (Smith Declaration 1-11 and exhibits thereto). Franklin's repeated refusal to sign something that said he could not reapply was conveyed by Franklin to Klug during this period. (App. FRA00543)

5. On Friday March 26, 1999 Mr. Franklin told Ms. Whatley that he would accept the $150,000 amount and would resign his position but not permanently retire as he intended to reapply with BNSF in the future.( App. FRA00538-544)

6. On Friday March 26, 1999, Ms. Whatley conveyed to Mr. Smith by telephone that Mr. Franklin would accept the Railroad's offer of $150,000.00 and resign (not retire) she made no mention of any agreement by Franklin's that he would not "re-apply or otherwise seek employment with the Defendant at anytime in the future." (App FRA00460-461)

7. There was no actual additional communication between Smith and Whattley from the March 26, 1999 until the pre-trial hearing and the announcement of the settlement in open court which took place telephonically. *Def App.* 9 (Smith Declaration 7), Mr. Smith did send a draft of settlement documents to Ms Whattley on March 29, 1999, which contained the following material terms:

> "The execution of this Agreement shall represent Plaintiff Franklin's resignation from employment with Defendant, effective April , 1999, and Plaintiff Franklin agrees *not to apply for any position or otherwise seek employment with Defendant at any time in the future.*(emphasis added.)" (App FRA 00057)

The highlighted term was not something that Ms. Whattley or the plaintiff had agreed to orally or in writing at any time but had been

10

unilaterally included in the draft document by Mr. Smith. (App FRA00460-461) .

8. Between the conversation on March 26, 1999 and the pre-trial hearing, Mr. Smith also tried to contact Ms. Whattley to discuss the written agreement he had sent and the pre-trial hearing that had been set for March 31. He was unable to do so directly as she was out of the office, but left a message on her answering machine simply alerting her to the upcoming hearing.

9. On March 31, 1999, the lawyers for the Plaintiff and the Defendant met with the court via telephonic conferencing and advised the Court that they had settled the case and Mr. Smith, on behalf of the Defendant, announced the terms of the settlement in open Court as follows:

> The basic terms of the agreement with Mr. Franklin are Burlington and Santa Fe has agreed to pay him a total of $150,000. In exchange he has agreed to release all claims against the Burlington Northern. *He's agreed to resign his position with the Burlington Northern and Santa Fe Railway Company.* There are confidentiality provisions. Certain representatives of the Burlington Northern Santa Fe Railway Company have agreed to advise the president and chief executive officer of Mr. Franklin's desire to meet with him. And other than standard boiler plate provisions, *those would be material terms of the agreement with Mr. Franklin.* (emphasis added).(App FRA 00087-00090)

The material terms of the agreement announced in open court by Mr. Smith omitted any reference to the plaintiff's ability to seek re-employment, or to

11

make future applications for employment with the Railroad. They did reflect the terms conveyed by Ms. Whattley to Mr. Smith the last time they had spoken together on the previous Friday. (App. FRA00460-461)

10. After the hearing, Ms. Whattley and Mr. Smith engaged in additional discussions about certain amendments to the documents and Mr. Smith forwarded a new set of documents, which arrived at Ms. Whattley's office on April 6, 1999. The new set of documents contained, inter alia, the following language:

> The execution of this agreement shall represent Plaintiff Franklin's resignation from employment with Defendant, effective April 1, 1999, and *plaintiff Franklin agrees not to apply for any position or otherwise seek employment with Defendant at any time in the future. In addition to the payments specified in Paragraph 3 of this Agreement*, Plaintiff Franklin will be entitled to any post-termination benefits or payments available under the applicable collective bargaining agreement to a dispatcher who voluntarily resigns his employment, which benefits or payments, if any, will be processed as part of Defendant's normal payroll procedure. Defendant will also notify Plaintiff Franklin in the manner required by law of his right to continue his health insurance coverage under COBRA. (emphasis added) (App FRA 00465)

Because of that provision, Franklin refused to sign the documents when Ms. Whattley met with Mr. Franklin on April 6, 1999. Whattley and Franklin immediately called Smith to discuss why he had added that provision to the

12

settlement agreement. They discussed changes to that provision. (App FRA00058-59)

11. On or about the 13th of April 1999, after some additional discussion, defendant's attorney sent to plaintiff's attorney another draft of the settlement documents, which amended the provision cited above to read as follows:

> The execution of this Agreement shall represent Plaintiff's resignation from employment with Defendant, effective April 1, 1999, and *plaintiff agrees not to apply for any position or otherwise seek employment with defendant for at least 10 years from the date this agreement is executed.* In addition to the payments specified in Paragraph 2 of this Agreement, Plaintiff *will be entitled to any post-termination benefits or payments available under the applicable collective bargaining agreement to a dispatcher who voluntarily resigns his employment,* which benefits or payments, if any, will be processed as part of Defendant's normal payroll procedure. Defendant will also notify Plaintiff in the manner required by law of his right to continue his health insurance coverage under COBRA. (emphasis added). (App. FRA 00386-388)

12. Once again Franklin refused to sign this agreement. Instead he forwarded an agreement, which he did sign, which provided for his resignation but eliminated any prohibition on future re-employment. BNSF refused to sign that document but instead elected to rely on the verbal agreement announced in open court. (App FRA 00059-60)

13. On April 14, 1999, BNSF filed a "Motion to Alter or Amend Judgment" but had elected not to pursue that motion, instead relying on the

13

oral agreements announced in open Court. Smith conveyed this decision to Whattley in a letter dated April 15, 1999. (App. FRA 00129-130)

14. In reliance on that verbal agreement, which did not include a prohibition on re-employment, Plaintiff and Wattley then negotiated the check. (App FRA.00151-156)

15. In June, 1999, Franklin attempted to re-apply for a job as a dispatcher with BNSF and was refused an application. (App FRA00143-145)

16. On December 23, 1999, Franklin brought suit in Cause No. 4:00-CV-1508-A asserting that Defendant's refusal to rehire and refusal to even give Plaintiff an application was made in retaliation for Plaintiffs having filed the prior complaint with the Equal Employment Opportunity Commission ("EEOC") against Defendant, and for having filed the original suit against Defendant in 1998. *Def. App.* 150-153 (*Franklin v. Burlington Northern Santa Fe Railway Corporation*, NOA-99CA828SS.). (App FRA 000198-201)

17. On June 12, 2001, Steve J. Klug Assistant Vice President of Human Resources for The Burlington Northern and Santa Fe Railway Company filed a declaration in that lawsuit which, inter alia, stated the

14

following claims related to BNSF's decision not to allow Mr. Franklin to submit an application for employment:

> "...During his tenure at BNSF, *Franklin was disciplined several times for unacceptable job performance.*" (In his original lawsuit Franklin had asserted that these disciplinary actions were racially motivate.)

> "...On about March 26, 1999, I was informed that Franklin had agreed to settle the First lawsuit. I was also made aware that, on March 31, 1999, Judge John McBryde (who presided over the First Lawsuit) held an impromptu phone hearing, at which counsel for both parties announced on the record that the case was settled and that, as part of that settlement, Franklin agreed to resign his employment. A true and correct copy of a transcript of that hearing is attached as exhibit A. Judge McBryde then dismissed the first Lawsuit with prejudice. *Mr. Franklin then tried to back out of the deal.*"

> "...In June or July of 1999, Franklin contacted me to inquire about a possible rehire as a Dispatcher. I told him that *he was not eligible for rehire nor did the Company have any current vacancies for experienced Dispatchers.*"

> "...The following is a list of some of the persons BNSF identified as having knowledge relevant to the First Lawsuit: (he lists 12 names)."

> " Those individuals have information related to Franklin's job performance while at BNSF, other issues raised in the First Lawsuit, and/or settlement of that lawsuit. *That information is relevant to BNSF's reasons for not wanting to rehire Frankilin....*"(emphasis added).(App FRA00143-146)

18. On September 25, 2001 the Trial Court, Judge McBryde, granted Summary Judgment for the defendants on two grounds, the first dealt with limitations and the second dealt with the merits of the case wherein

15

defendant asserted similar theories as are now before this court. In summary, they argued, and Judge McBryde agreed, that whether or not there really was an actual agreement barring Franklin from reapplying, Mr. Klug, the human resource manager for BNSF" believed" that such an agreement existed and could refuse to give Franklin an application based upon that belief. The Plaintiff appealed.

19. The Court of Appeals upheld the trial court on a technical issue of whether of not Plaintiff had filed his lawsuit in a timely manner after receiving the right to sue notice. The Court of Appeals did not make any determination as to second issue dealing with the merits. (*Franklin v. Burlington Northern Santa Fe Corporation*, No. 01-11383, 34 Fed. Appx. 963, 2002 WL 663746, 2002 U.S. App.Lexis 7808 (5th Cir. March 29, 2002)(unpublished).

20. As part of its Summary Judgment filing in Cause No. 4:00-CV-1508-A, Defendant's filed another declaration of Steve Klug which, inter alia, stated the following in connection with BNSF's refusal to give an application to Franklin:

> ...*My understanding of the settlement* is that in exchange for a substantial payment from BNSF, Mr. Franklin agreed, among other things , to *permanently* resign his employment effective April 1, 1999, *and thus that he would not ever seek re-employment by BNSF and BNSF would have no obligation to consider him for rehire*....

16

...My understanding of the settlement agreement is consistent with the company's *general practice that where it gives something of value (usually money) to an employee to effect a separation from employment, that employee is ineligible for rehire.* Involuntary separations, retirement, or resignations under those circumstances are considered by the company to be permanent, and the individuals are not generally eligible for rehire....Further *when the circumstances do involve claims by the employees, the policy applies regardless of the type of claim(s) asserted.* One application of this practice outside of the litigation context is reflected in BNSF's Human Resources Employment Policy, Policy no 20,1 at pp. 5-6... [ Defendant now agrees that this policy does not apply to scheduled employees such as the plaintiff].

...I did not decline on behalf of the company to accept any application from MR. Franklin because he had filed an EEOC charge, or had filed or settled a Title VII lawsuit against the company. Instead, I acted solely based on my understanding and belief about what the parties had agreed to in the settlement (emphasis added) (App FRA 00144)

21. In July of 2002, Plaintiff again attempted to apply for a job as a dispatcher with the Defendant and the Defendant again refused to even give him an application or consider him for rehire. *Def. App.* 176-181, 182-185,200-01,265-66,273-76,315,318 (Franklin Deposition 12-17, 19-22 and exhibits identified therein), *App* 74-75 (Klug Deposition 98-99, 106-109 and exhibits 5,8 identified therein).

22. On August 29, 2002, Mr. Klug, replied to Mr. Franklin in pertinent part as follows:

Regardless of whether you are referring to the 1999 request for employment or some subsequent request, BNSF does not consider you qualified for employment and will not process any application for employments that you make for the following reason: you agreed to

17

*permanently* resign your employment effective April 1, 1999, *and not to ever seek re-employment by BNSF,* and thus the Company does not have any obligation to consider you for rehire. (emphasis added)(App FRA 00530-FRA00533)

23 .Mr. Franklin was technically qualified for job for which he applied and BNSF was accepting application for that job. (App FRA 00124-12and App FRA 00530-533))

24. Once again Plaintiff complained to the EEOC, which issued him a right to sue notice. Plaintiff then filed this suit in a timely manner asserting that Plaintiffs refusal to hire him was in retaliation for the complaint filed with the EEOC and the subsequent lawsuit asserting racial discrimination. (APP. FRA 00167-192)

18

## SUMMARY OF THE ARGUMENT

1. Franklin's Summary Judgment evidence, set forth above, at a minimum raises a fact issue as to whether or not Burlington's proffered explanation for its's refusal to allow Franklin to apply for employment was reasonable.

2. Franklin's Summary Judgment evidence set forth above, at a minimum, raises a fact issue as to whether or not Burlington's proffered explanation was merely a pretext.

3. BNSF's reliance on the proffered beliefs of the one employee responsible for hiring and firing is not a legitimate rational for failing to provide an employement application to Franklin when BNSF knew that those beliefs were incorrect and failed to provide that employee with the correct information.

4. The Magistrate failed to apply the correct standards for evaluating summary judgment evidence and sought reasons to ignore certain facts, comments on the weight of certain facts, or interpret certain facts so as to discount them. The Magistrate failed to view the evidence in light favorable to Appellant.

5. The evidence presented clearly shows that no agreement existed wherein Franklin "permanently" resigned or agreed to never apply for a job

19

again with BNSF. The only evidence of actual agreement is the record in the underlying suit, which provides only for resignation without any other language. It says nothing about reapplying. Absent such actual agreement, BNSF had no legitimate basis for refusing to give Franklin an appliction for re-employment. Franklin's partial motion for Summary Judgment should have been granted as a matter of law.

## ARGUMENT

### ISSUE ONE AND TWO RESTATED: DOES THE SUMMARY JUDGMENT EVIDENCE RAISE A FACT ISSUE AS TO:
### 1. THE REASONABLENESS OF BNSF'S PROFFERED NON – DISCRIMINATORY REASON FOR DENYING FRANKLIN AN APPLICATION;
### 2. WHETHER SUCH PROFFERED EXCUSE WAS MERELY A PRETEXT.

Both the legitimacy question and the pre-textual question are discussed together as the law and the facts applicable to both issues overlap.

It is well settled that the pre-trial summary judgment court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Lytle* v. *Household Mfg., Inc.,* 494 U. S. 545, 554-555 (1990); *Liberty Lobby, Inc., supra,* at 254; *Continental Ore Co.* v. *Union Carbide & Carbon Corp.,* 370 U. S. 690, 696, n. 6 (1962). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions,

20

not those of a judge." *Liberty Lobby, supra,* at 255. Thus, although the pre-trial court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. See Wright & Miller 299. That is, the court should give credence to the evidence favoring the non-movant as well as that "evidence supporting the moving party that is un-contradicted and un-impeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.,* at 300.

The rationale coming from BNSF's Vice President in Charge of Personell, Steven Klug cannot be viewed as "reasonable in light of the facts of this case either from an objective standard or from a subjective standard. First Klug is not a "disinterested witness:" His rationale, in fact, is expressed more as an opinion, the foundation of which is at best circumstantially questionable. He basically is of the opinion that Franklin made an agreement "never to re-apply for a job" when the only written memorialization of that agreement (the Court record in the underlying suit) and all the evidence from Franklin himself refutes the existence of such an agreement.

Through Klug, BNSF offered two different rationals at two different times for refusing to give Franklin a job application. They were not consistent and raise a factual issue as the credibility of either.

21

The first was in Klug's declaration of July 31, 2001 indicating that BNSF had a policy, which they sometimes euphemistically refer to as a "practice," that if BNSF gives something of value to an employee to effect a separation from employment that employee is not "usually eligible for rehire."

The second was expressed in Klug's letter to Franklin of August 29, 2002, wherein BNSF asserts that they believed that Franklin had agreed "never to reapply" as part of the settlement of the first racial discrimination lawsuit.

**1) Defendant's articulated reason relating to existing "policy" for denying the plaintiff an application is both unreasonable and pretextual.**

BNSF, through their human resource manager, Steve Klug admits that they had a practice and a policy (Klug uses both words to describe it) of refusing to rehire anyone to whom they pay a monetary settlement regardless of the basis for that settlement and including settlements in discrimination suits. The policy according to Klug is unpublished except to the extent that it is set forth in writing for "exempt" employees and is written into severance agreements in other instances. That written policy did not apply to Franklin because he was a "scheduled" employee. Franklin was unaware of its existence.

22

In *Kendall v. Watson* 998 F.2d 848 (10th Cir.1993),cert denied, 510 U.S. 1120, the Tenth Circuit drew a distinction between the "fact of a settlement" and "the terms of the settlement." Not allowing a former employee to reapply because they settled a discrimination lawsuit and resigned and not allowing them to reapply because they had  an agreement not to do so are two separate and distinct actions.  In *Kendall, supra* the operative language in the agreement was that she would resign and, after that date, the employer **"would have no further obligation to her"**.  In the instant case there exists no agreement doing away with any "further obligation" on the part of BSNF.  The only thing Franklin agreed to do was to resign as part of his settlement.

The fact that BSNF did put this policy into the other written severance agreements with exempt employees and actually tried to put it into Franklin's written settlement agreement indicates three things:

1, that BSNF knew that such an agreement had to be reduced to writing in order to be enforceable

2. that BNSF knew that Franklin's agreement to resign standing alone did not permit them to deny him an application for reemployment on the basis that Franklin had settled a discrimination suit.

3. and, most importantly, BNSF actually knew that Franklin had, unlike the plaintiff in *Kendall, supra.*, not entered into an agreement to forgo ever reapplying for a job or that BNSF **"would have no further obligation to him."**

**2). Defendant's "policy", when applied to a Title VII claim is per se retaliation and hence fails as a "non discriminatory" or "non retaliatory" articulated rational.**

In this instance, this policy was applied to a plaintiff who sued for racial discrimination. In other words, once Franklin sued BNSF, if he was successful and recovered money by way of settlement, he was unable to keep his job whether he agreed with that result or not. Had this unilateral practice or policy been effectuated by way of a settlement agreement executed knowingly by the plaintiff, then the issue would be limited to one of whether such a policy or practice standing alone was against public policy and the analysis of ***Kendall supra*** might apply.

However, a practice of insisting on permanent resignation or retirement from employment as a condition of settlement on all suits against the company including Title VII suits is unquestionably "retaliatory" when applied to a plaintiff who did not know of its existence and did not agree to such a provision as part of his settlement. Franklin was unaware of such a

24

policy .Klug admitted such a policy was not published.  Such a practice would thwart the basic public policy both against discrimination and in favor of amicable resolution of claims by forcing anyone who contemplates bringing a claim to have to sacrifice his or her future employment.

### 3. BNSF'S articulated rational that Franklin had agreed to permanently resign and never reapply for a job is both unreasonable and pretextural.

Mr. Klug's asserts the "articulated rational" in his Declaration of July 31 of 2001 that his understanding was as follows:

> …       *My understanding of the settlement* is that in exchange for a substantial payment from BNSF, Mr. Franklin agreed, among other things , to *permanently* resign his employment effective April 1, 1999, *and thus that he would not ever seek re-employment by BNSF and BNSF would have no obligation to consider him for rehire….*
> …My understanding of the settlement agreement is consistent with the company's *general practice that where it gives something of value (usually money) to an employee to effect a separation from employment, that employee is ineligible for rehire.* Involuntary separations, retirement, or resignations under those circumstances are considered by the company to be permanent, and the individuals are not generally eligible for rehire….Further *when the circumstances do involve claims by the employees, the policy applies regardless of the type of claim(s) asserted.* One application of this practice outside of the litigation context is reflected in BNSF's Human Resources Employment Policy, Policy no 20,1 at pp. 5-6…(emphasis added).

Notice that this declaration states that Franklin agreed to "permanently" resign and that Klug concluded that Franklin would "never seek re-employment and that BNSF, (tracking the language of the *Kendall* case above), "**would have no obligation** to consider him for re-hire." After

25

which, he cites the policy discussed above to support his conclusory statement. BNSF asserts that Franklin was specifically told of this policy when he attempted to reapply in 1999. They are specifically asserting that this policy was one of the reasons they denied Franklin the ability to reapply. In other words, "we have a policy that we never told Franklin about but that when he settled his discrimination suit and resigned, the policy would kick in and prevent him from any future employment with us and that is, in spite of the fact, that he never agreed to forgo future employment as part of his settlement."

On August 29, 2002, Klug, in a letter to Franklin, states the second, more narrowly defined "articulated rational":

> ...Regardless of whether you are referring to the 1999 request for employment or some subsequent request, BNSF does not consider you qualified for employment and will not process any application for employments that you make for the following reason: you agreed to *permanently* resign your employment effective April 1, 1999, *and not to ever seek re-employment by BNSF*, and thus the Company does not have any obligation to consider you for rehire. (emphasis added) *Def. App. 310* (Klug Deposition Exhibit 2).

In this letter Klug is continues to assert that Franklin not only agreed to resign he agreed to "permanently" resign. Now however, Klug asserts that Franklin actually agreed "not to ever seek re-employment by BNSF"

The further away from the time when he first made the determination not to give an application to Franklin the more he adjusts his stated reason

26

for doing so to the Defense's "articulated rational" for failing to rehire Franklin. This will become even more pronounced below and demonstrate to the court that this rational is mere pretext.

The evidence that both articulated rationales, the one set forth on July 31, 2001 and the one set forth to Franklin on August 29, 2002 were merely pretextual is as follows:

   1) **BNSF knew that Franklin did not agree at any time that he would never reapply**:

      a) the only enforceable agreement was that announced on the record and only included the statement that Franklin would "resign;"

      b) BNSF added additional language in connection with the resignations term of the written agreement trying to include language that Franklin would specifically agree in writing never re apply.

      c) when confronted with the additional written language about never applying in the future, Franklin refused to sign and specifically told Kent Smith that he did not agree to refrain from reapplying in the future.

      d)) when advised that the written document did not comport to the announcement on the record, BNSF tried to negotiate with Franklin to insert a time period before reapplication in the written settlement document;

27

e) Franklin forwarded a written agreement that comported in all material terms with the announcement on the record indicating his understanding of the agreement;

f). BSNF refused to sign the written agreement presented by Franklin and elected to rely on the oral agreement announced in open court;

g) when a written agreement could not be reached BNSF filed a motion to amend or alter the written judgment, which provided for settlement terms as announced on the record.

h) BSNF elected to rely on the oral agreement alone and not pursue their motion to amend or alter the judgment;

2) **In spite of his subsequent claims above, Klug gave very different reasons for BSNF's refusal to rehire Franklin in an earlier declaration filed for the Court to rely on dated June 12th, 2000.**

a) "During his tenure at BNSF, **Franklin was disciplined several times for unacceptable job performance."**

b)." I was made aware...(that)counsel for both parties announced on the record that the case was settled and that, as part of that settlement, Franklin agreed to **resign** his employment (and attached only a transcript of the hearing wherein the announcement was made in open court and only the

28

word "resign" was used.) ....".**Mr. Franklin then tried to back out of the deal.**"

c) When Franklin applied in July of 1999 "I told him he was not eligible for rehire "**nor did the Company have any current vacancies for experienced Dispatchers.**"

d) After naming a dozen or so employees Mr. Klug stated to the Court: "Those individuals have information **related to Franklin's job performance while at BNSF,** *other issues* *raised in the First Lawsuit, and/or settlement of that lawsuit.* That information is **relevant to BNSF's reasons for not wanting to rehire Franklin.**

The list of reasons first given by Klug in 2000 for not letting Franklin reapply not only fails to support the articulated reasons proffered by BNSF in their motion for Summary Judgment filed with this Court, but also it gives totally different reasons that are clearly retaliatory and clearly discriminatory.

This statement made by Klug to the Court mentions only Franklin's agreement to "resign" stated in open Court. There is no mention of the reason articulated on July 31, 2001 that Franklin agreed to *permanently*

29

resign his employment effective April 1, 1999, *and thus that he would not ever seek re-employment by BNSF* and *BNSF would have no obligation to consider him for rehire.* There is no mention of any policy that once a person accepts money to resign that he cannot be rehired. Likewise the articulated reason of the August 29, 2002 is absent., There is no mention that Franklin *agreed* to both *permanently* resign his employment effective April 1, 1999, *and not to ever seek re-employment by BNSF,* and thus the Company did not have "any obligation to consider him for rehire." (emphasis added)

The real reasons given by Klug for not offering Franklin the opportunity to reapply are uniquely the same ones for which Franklin sued BNSF in the first place:

1) "BNSF disciplined him several times for unacceptable job performance" which in the original suit he claimed was racially motivated

2) "Franklin's job performance while at BNSF "other issues raised in the first lawsuit/and or the settlement thereof" all of which is information "relevant to BNSF's reasons for not wanting to rehire Franklin..."

3) Klug's other reason in 2000 was that there were no "dispatcher jobs" That statement later proved to be in accurate

30

but even if it were accurate it would not have been a reason for denying Franklin an application.

Comparing the last "articulated rational" set forth by BNSF and the real articulated rational set forth by Klug above makes it self evident that BNSF's "belief" that Franklin agreed to never reapply for a job is "an after the fact inspiration, triggered by the necessity of fending off litigation. *Lloyd, supra 119.*

Even more self evident in some of Klug's early and relatively honest statement is that the real reasons they did not rehire Franklin had more to do with the "issues" raised in the first lawsuit, including complaint's about Franklin's job performance which Franklin in that suit claimed were racially motivated and which claims BNSF abandoned and even denied in this one.

Klug's reliance on any "practice" or "policy" as a basis for any alleged "belief" is also misleading. Klug new that on other occasions people who had effected a separation for cash returned to the company. He also knew, as discussed above, that all the negotiations with Franklin, including those after the announcement in open court concerned Franklin's refusal to "permanently" resign and his reapplication for a job. For example, he knew that they offered Franklin the ability to reapply after the passage of a certain amount of time. (See discussion of policy issues above).

31

**ISSUE 3 RESTATED:  BNSF's SOLE RELIANCE ON THE PROFFERED "BELIEFS" OF KLUG CANNOT BE A LEGITIMATE RATIONAL FOR BNSF'S FAILURE TO GIVE AN EMPLOYMENT APPLICATION TO FRANKLIN.**

BNSF's focus on the "belief" of Mr. Klug when he, acting on behalf of BNSF, refused to give an application to Franklin is misplaced.  Klug, at the time held the title of Human Resource Manager, and participated along with at least two other BNSF agents, Larry Stoika, the in house counsel and Kent Smith the outside counsel in the settlement as well as the negotiations. While Defendant attempts to limit its "belief" theory to Klug, it cannot ignore the fact that what the Defendant "believed" when it acted is more than just Klug.  To hold otherwise would allow the absurd result of an employer setting up a 'straw man" who is only informed of "proper articulated non-discriminatory rational" and who believes it to be true when he actually does the firing of an employee because he is kept in the dark as to the real reasons.  The machination is too obvious to give it any credibility. BNSF's beliefs are more than just Klug's beliefs; although as will be pointed out later, it really does not matter much in this set of circumstances.  A good example of this is the fact that Klug was told of all of the settlement negotiations through Stroik and Smith including the fact that Franklin refused to sign any document limiting his ability to reapply

32

Additionally, isolating the Personell Manager from information in BNSF's possession such as BNSF would have you believe occurred in this case is against public policy and the spirit and intent of the laws protecting citizens such as Franklin against discrimination and retaliation.. Allowing Klug to assert the *existence of an agreement* as a reasonable basis for denying Franklin an application is simply wrong when BNSF knew no such agreement existed, no such agreement was ever on the record or in writing and BNSF knew Franklin consistently refused to make such an agreement.

## ISSUE 4 RESTATED: . DID THE DISTRICTY COURT FAIL TO APPLY THE CORRECT STANDARDS FOR EVALUATING SUMMARY JUDGMENT EVIDENCE.

In the present case, the Magistrate in his memorandum gave undue credence to BNSF's rationale, without accounting at all for the evidence which contradicts and impeaches the foundation of BNSF's Thus the principal that the Court must view the evidence in a manner favorable to the non-movant was violated.

In accepting the "belief" of Mr. Klug, the Magistrate below wrongfully enforces an alleged agreement against Franklin when all the evidence indicates no such agreement existed. At a minimum Klug's assertion and that of BNSF was that the agreement "never to reapply" was an oral one given by Franklin's attorney. Even if that were true, which the

33

summary judgment evidence disproves, it would be improper to enforce such a purported oral agreement between two parties to litigation where it was not in writing and not made part of the record.. Enforcement of such "verbal covenant" also violates one of the most basic principles of contract; the Statute of Frauds, which is highlighted by the disputes presented in this case.

The Memorandum and Order below is replete with the Magistrate discounting, ignoring, or misinterpreting the factual assertions made by Franklin.. Not only does the Magistrate fail to view the evidence in light favorable to Appellant but also of argues with and interprets the evidence to fit into only one of many possible and credible scenarios. Some examples include discounting the evidence occurring after the announcement of the settlement in open court[2] and accepting as true testimony of Klug to refute the undisputed evidence that Franklin consistently refused to agree never to

---

[2] "The fact that BNSF made later revisions in an effort to make this term even more palatable to Franklin i.e. placing a ten- year limit on Franklin's application ban does not suggest that   BNSF had not contemplated Franklin's permanent departure as part of the verbal agreement on which the parties ultimately relied."

reapply and that no such agreement was announced in open court.[3] This weighing and determining of reasonableness, indeed, it's believability is for the jury not for the Court.

*Rule 56(c) of the Federal Rules of Civil Procedure* provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of *a genuine* issue of *material* fact defeats Summary Judgment. A genuine issue of fact exists in this case to whether or not BNSF's purported rational was reasonable. A genuine issue of fact also exists in this case as to whether or not their propertied rational was merely pretextual.

---

[3] "Franklin asserts that Klug cannot reasonable belief that the settlement agreement bars Franklin from reapplying for a new position with BNSF because the verbal agreement announced to the court provided only for Franklin's resignation. Klug, however provided reasonable deposition testimony that he view resignation, when paired with a payment to Franklin that was equivalent to approximately equal to threee years's salary as a permanent arrangement.... In fact, Klug designated Franklin as ineligible for rehire in BNSF's after Franklin's first lawsuit was settled."

35

## <u>ISSUE 5 RESTATED: THE SUMMARY JUDGMENT EVIDENCE ALLOWS ONLY ONE INTERPRETATION AND THAT IS THAT THERE WAS NO AGREEMENT TO "NEVER REAPPLY" BUT ONLY TO "RESIGN" AND BNSF'S PROFFERED RATIONAL BASED ON SUCH AN AGREEMENT FAILS AS A MATTER OF LAW.</u>

The facts of this case are conclusive that BNSF and Franklin failed to have a meeting of the mind with regard to Franklin's ability to reapply for a job with BNSF. Absent such agreement Franklin, as a matter of law, has proven all the elements necessary for Summary Judgment in his favor on the liability portion of his claim. He has shown that he is a member of a protected class (African American), that he was subject to an adverse employment action (Refusal to give him an employment application) and that BNSF took the adverse employment action either because of his race or because of a protected activity. (He filed a discrimination suit against them). 42 U.S.C.§§ 2000e-2(a), 3(a), *McDonnell Douglas Corp v.* Green, 411 U.S. 792 (1973), and *Sherrod v. American Airlines, Inc.* 132 F.3d 1112, 1122 (5th Cir. 1998).

## <u>CONCLUSION</u>

Appellant prays that the Court vacate the judgment below and enter partial judgment for the Appellant as to liability and remand the case to the Court below for trial on the merits as to damages.

In the alternative, Appellant prays that the Court vacate the judgment below and remand the case to the Court below for trial on the merits.

Respectfully Submitted,

Ferraro, P.C.

By: _____

Peter E. Ferraro
State Bar # 06934600
Frederick J. Castro, Esq.
State Bar # 24045628
1104 San Antonio Street
Austin, Texas 78701
Telephone: (512) 474-7825
Facsimile: (512) 474-8106

## CERTIFICATE OF SERVICE

I, Peter E. Ferraro, certify that today , July 20, 2005, a copy of the brief for Appellant, and a copy of the Appendix consisting of two volumes of the record were served upon Bryan P. Neal, Thompson & Knight , by via U.S. Mail to his office at 1700 Pacific Avenue, Dallas, Texas 78205 .

37

By: _____

Peter E. Ferraro
State Bar # 06934600